*1070 The opinion of the Court was delivered by
Bermudez, C. J.
This is an application for a habeas corpus. It was filed yesterday, argued and submitted late in the evening.
The Relator complains that on the 8th of October, 1831, a year ago, ho was tried for a capital offense, convicted and sentenced to be hung, and that his execution is fixed for the Bith October, inst., three days hence.
He charges that the sentence passed upon him is an absolute nullity on its face, for the following reasons :
It is a mere, entry by the clerk on the minutes.
It does not contain the essential words “ it is considered,’’'1 which are sacramental to a common law judgment, and it is not peremptory.
It does not include the reasons upon which it is founded, and it is not signed by the Judge.
The Relator charges further, that even if the sentence be valid, it cannot be carried out, as the execution thereof was stayed by a petition which he has filed before the Board of Pardon, for a commutation to imprisonment at hard labor for life ; that his prayer for mercy has been neither rejected nor granted; that there being no Lieutenant Governor, the Board is incomplete, composed of the Attorney General and the Judge who passed the sentence, and that these have failed to agree; that the Governor has no authority to issue the death warrant, which he has, until said application has been refused.
The Relator, therefore, concludes, that there existing no valid sentence of conviction, he should be restored to liberty, or if there exist such, it should not be executed until his prayer for mercy shall have been declined.
Had it not been charged and argued that the sentence passed upon the prisoner is absolutely null on Us face, we would refrain from expressing any opinion on the sufficiency of the grounds of attack, for it is well settled, that the habeas corpus proceedings cannot be converted into a writ of error. C. P. 822, (7).
The objections made to the regularity and validity of the sentence are untenable.
It is not required that such judgments be drawn up by the Judge and kept in the record as a separate and distinct proceeding. It is enough that such be noted or entered by the clerk in the minutes of the court, which is the register in which the law requires that all judgments be recorded.
It is not essential that the words, “it is considered,” be included in the sentence.
The entry made in the minutes is in the words following:
“ The accused, Paul Pringle, being in open court, was asked by the *1071 court, wliy the sentence of the court should not be passed against him, and having answered, the sentence of the court was pronounced as follows : That you, Paul Pringle, be remanded to the jail from whence you came, and on such day and hour as the Governor of the State may tlx, that you be hanged by the sheriff of this parish, by the neck, until you be dead! dead!! dead!!!
It is manifest, that this is a positive, unequivocal, unconditional decree or sentence of a court of justice exercising criminal jurisdiction.
It has the complexion or characteristic features of a judgment of the greatest solemnity. It is as. absolute and peremptory as it was possible to make it.
Prom the fact that it provides for the fixing of the time of execution by the Governor of the State, it cannot be inferred that the judgment is vague and uncertain, and, therefore, void on that score.
The form used is that commonly followed. The words having reference to the fixing of the time were unnecessary, and may be considered a superfluity.
It is made the duty of the Governor to cause to he carried out sentences of death. Had not the words been used, it would not have been the less his duty to have had the judgment executed. In the performance of that stern function he cannot he arrested, unless by the granting of a recommended pardon.
The rules prescribed by the Code of Practice, and invoked by the petitioner, for the rendition and form of judgments, obtain in civil, hut not in criminal cases.
It is not necessary that sentences passed upomprisoners, after verdict, by Judges of criminal courts, should contain the reasons upon which they are founded. The constitutional requirement, in this particular, applies to judgments rendered by the Judge alone, and not to those rendered by him upon verdicts of juries, specially in criminal cases. It is sufficient that it appear from the proceeding that a legal verdict was rendered, justifying the passing of the sentence. Neither is it required that such judgments or sentences he signed. It is not customary that they he. At common law, judgments are not required to be signed. The judgments of this Court, either in civil or criminal cases, require no signature.
We, therefore, conclude, that the sentence is valid on its face, and we will now proceed to consider and determine the other branch of the case, namely, whether the execution of the sentence is suspended by the petition for commutation.
Article 66 of the Constitution reads as follows :
tl The Governor shall have power to grant reprieves for all offenses *1072 against the State and, except in eases of impeachment or treason, shall, upon the recommendation in writing of the Lieutenant Governor, Attorney General and presiding Judge of the court before which conviction was had, or any two of them, have power to grant pardons, commute sentences, and remit fines and forfeitures, after conviction.”
The Article does not confer on prisoners convicted of offenses the right of petitioning for pardon or commutation. That right was not required to be conferred. It is an inalienable right, which can neither be abridged nor bartered away. The Article tacitly recognizes its existence and regulates executive action over it when it is exercised.
The Article was not designed to give to the exercise of that right the effect of suspending indefinitely the execution of the sentence against the supplicant for mercy. It was intended as a check on the prerogative of the Executive to grant pardons or commutations, mere quia sie placet, a prerogative the abuse of which has been previously most keenly felt by the good people of this State.
Where judgments are rendered and become final, that is, sovereign, so that they cannot be disturbed, the rule is, that they become executory and produce their effect.
The Governor’s duty was to cause to be executed the judgment or sentence passed upon the petitioner, without unnecessary haste, after it had become executory.
The record unmistakably shows that the Governor, in the exercise of a sound discretion and animated by laudable motives of charity, has allowed the prisoner most ample time to pray for mefcy before the competent authority. He has already granted him three rex>rieves, and it is only after waiting nearly a year, and after the application for commutation had been practically rejected, that he has determined to issue the death warrant, under which the life of the Relator is to terminate.
We do not propose to determine whether there is or is not a Lieutenant Governor of the State.
Conceding arguendo that there is no such officer in existence, and that the Attorney General and the District Judge who presided over the court before which the convictiou was had, have agreed for mercy, the Governor was under no legal obligation to grant a pardon or commutation, and had legal authority to sign the death warrant which he has issued.
The Article of the Constitution is clearly to the effect, that the Governor shall have no power to pardon or commute, unless the Board or a majority of its members shall recommend the same. A recommendation would not have been binding upon him.
*1073 The people, by their Constitution, have imposed upon him the moral obligation and grave responsibility of deciding for himself, before God and men, what the cases are in which pardons or commutations being recommended, lie should exercise sovereign clemency. He must he left untrammelled.
For those reasons:
It is ordered, adjudged and decreed, that the petition for a habeas corpus he refused, and that the prisoner remain in legal custody.